Filed 3/7/16  In re A.P. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re A.P. et al., Persons Coming Under the Juvenile Court Law. | C079395 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.P. et al., <br><br> Defendants and Appellants. | (Super. Ct. Nos. 13JVSQ2984301, 13JVSQ2984401, 13JVSQ2984501) |

        J.T., mother of the minors, and D.P., father of A.P., appeal from the orders of the

juvenile court denying their petitions for modification and terminating their parental

rights.[1]  (Welf. & Inst. Code, §§ 388, 366.26, 395.)[2]  Mother contends the court abused

_____

[1]  B.B., the father of the other two minors, has not appealed.

1

its discretion in denying her petitions for modification and erred in failing to apply the beneficial parental relationship exception to avoid terminating her parental rights. Father argues the denial of his petition for modification should be reversed for ineffective assistance of counsel. Father further argues the court erred in terminating his parental rights in light of counsel's inadequate representation regarding his petition for modification which resulted in a denial of due process. We affirm.

FACTS

The minors, T.T., age four; A.T., age two; and A.P., age three months, were detained in September 2013 due to parental substance abuse and chronic domestic violence which placed the minors at risk of physical harm. When the Shasta County Health and Human Services Agency (Agency) removed the minors from the home, they went willingly with the social worker and did not ask to return home. The minors were placed together.

The disposition report recommended the parents be offered reunification services. An addendum filed in December 2013 stated D.P. had been sentenced to state prison. Mother was making little progress in services and had only sporadic contact with the Agency. The minors were thriving in foster care. All three had shown delays of various sorts when removed from the home, and all were showing improvement.

A second addendum in February 2014 reported the minors continued to make progress in overcoming their delays. Mother did not recognize that her behaviors had led to the minors' removal and remained minimally involved with services. D.P. was serving a two-year sentence in state prison and services were no longer recommended for him since the length of his sentence exceeded the reunification period. The Agency continued to recommend reunification services for mother.

---

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

At the jurisdiction/disposition hearing in February 2014, the court sustained the petitions, ordered services for mother, and bypassed services for D.P. The June 2014 case plan for mother required her to attend and show progress in anger management classes, participate in a mental health assessment including a psychiatric evaluation, complete a domestic violence program, participate in a parenting class, and submit to drug testing. D.P.'s attorney informed the court she would file a petition for modification seeking services when D.P. was released from custody.

The July 2014 review report recommended termination of mother's services. Mother had made some changes, but when she did not get her way, she reverted back to blaming others for her failures. D.P. remained in prison and sent the social worker two certificates for three-day training programs in conflict resolution. Mother visited fairly consistently and was able to demonstrate parenting skills when interacting with the minors but still asked for a lot of help from staff in visits. Mother continued to have outbursts and difficulty managing her emotions, requiring staff to be present for mother's transactions with the foster mother. Visit staff was concerned because mother's unstable emotional state led her to snap at the minors. Mother did not take responsibility for the minors' removal, had not done required random testing, and had not completed the recommended mental health services, including a psychological evaluation, individual therapy, a medical evaluation, and anger management classes. The review hearing was continued due to D.P.'s imminent release from custody.

An addendum in September 2014 stated that mother did complete a psychological evaluation which concluded mother would benefit from therapy. Mother had begun individual therapy and her anger management class was nearly complete as she needed only two more classes. Mother tested positive for marijuana in July 2014 and failed to test in August 2014. Mother's contact with the social worker had marginally improved, but she was evicted from her residence in August 2014. Mother continued to use good

parenting skills when visiting the minors. D.P. remained in state prison and expected to be released in late September 2014.

D.P. was out of custody and present at the six-month review hearing in October 2014 but did not file a petition for modification seeking services. The court adopted the recommended findings and orders terminating reunification services for mother and setting a section 366.26 hearing to select a permanent plan.

The January 2015 assessment for the section 366.26 hearing recommended termination of parental rights. Mother continued to visit and show good parenting skills. D.P. had visited A.P. twice since his release from state prison in September 2014. A.P.'s delays had resolved and the behavioral issues of the other two minors, A.T. and T.T., were being addressed with consistent parenting and therapy. The Agency planned to transition all three minors to an approved placement in Idaho with the paternal grandparents of A.T. and T.T. The Agency assessed the minors as adoptable although they had ongoing behavioral issues and skill delays.

Mother filed section 388 petitions for modification in January 2015, seeking to modify the October 2014 order terminating her services to an order returning the minors to her custody with family maintenance services. Mother alleged, as changed circumstances, that she visited regularly and had graduated from the 16-week anger management class on October 13, 2014. Mother also alleged she had stable housing and was voluntarily continuing to participate in Triple P parenting. Mother alleged the proposed order was in the minors' best interest because they had a strong bond with her and reunification was in their best interests.

In March 2015, the Agency filed an addendum addressing the visitation relationship between the parents and the minors. Mother had monitored visits once a week for two hours. Mother was affectionate and attentive at visits, greeting the minors with smiles and hugs. Mother brought activities to engage the minors and her attendance was good.

4

The social worker also observed a visit in February between mother and all three minors. Mother involved the minors in activities, redirected them as needed, and maintained eye contact with the baby. The social worker did not see any physical expressions of affection from mother or the minors and the minors did not say they loved her. Mother did not hold A.P. The foster mother reported that the minors seldom ask to see mother but are happy about going to visits because they get presents and mother brings food. The foster mother said the youngest minor did not see mother as parental and visits for the other minors were simply a part of their weekly routine. The addendum concluded that the minors had a relationship with mother due to the continued visits but that mother did not fill a parental role for them. Further, there was no evidence she had resolved the issues of drug abuse and domestic violence which had led to the minors' removal and her reported progress had not been sustained over time.

D.P. had supervised monthly visits and started visiting in October 2014. The social worker observed D.P.'s February 2015 visit. D.P. appropriately parented A.P. and the visit went well.

A second addendum in April 2015 reported mother's last drug test was in June 2014 and that it remained difficult to contact her about the petitions for modification, vaccination permission for the minors, and other issues. The addendum noted mother had not completed the recommended mental health services. The Agency had been unable to verify mother's claimed medical issues and could not assess whether she continued to blame others for the minors' removal. The minors needed permanency now and could not wait for mother to demonstrate whether she could safely care for them.

A third addendum in mid-April provided an update regarding a sheriff's record of a call to a recent domestic violence incident between mother and D.P. at the trailer park where mother lived. The Agency remained concerned about mother's ability to regulate her emotions.

5

In May 2015, D.P. filed a petition seeking to modify the February 4, 2014, order bypassing his services to an order for services based on his recent discharge from incarceration. (§ 366.22, subd. (b).) D.P. alleged, as changed circumstances, that he completed a parenting education program in prison, maintained contact with the social worker, and immediately contacted both counsel and the social worker on his release. D.P. alleged the modification would be in A.P.'s best interests because he had visited A.P. since his release from custody; had engaged in voluntary services including parenting, drug and alcohol treatment, and anger management; was employed; and was living with family. D.P. attached certificates from programs he completed in prison, including a three-day training in anger management and conflict resolution; a three-day training in advanced anger management and conflict resolution; completion of a parenting education program and a letter of support from his current employer. D.P. also provided a letter dated April 14, 2015, from his probation officer stating that D.P. was compliant with his conditions of his release and was referred to a 52-week batterer's program to help him reunify with mother. D.P. had last attended the program in March 2015 and had only completed eight and one-half weeks of the program. The probation officer made it clear that the program was not required as a condition of his supervision.

The combined hearing on the section 388 petitions for modification and the section 366.26 issues commenced in May 2015. Mother testified she had not done any additional classes but had continued to work on personal growth and conflict resolution "within herself." Mother testified she did complete the anger management class she was in when services were terminated in October 2014. Further, she had continued with parenting classes which helped her during visits. Mother testified she currently had a stable residence in a mobile home she bought, had food and clothing for the minors, and was drug free, although she had not participated in services for that issue. Mother said she had not been involved in domestic violence since October 2014 and was not at the trailer park during the incident described in the Agency's third addendum. Mother felt

6

she could care for the minors with family support and had not needed mental health treatment or medication. Mother did go to a counselor, but it was expensive and she had not seen the counselor since services were terminated. Mother believed she was stable now and it was best for the minors to be in her care.

D.P. testified that while he was in prison for domestic violence against mother, he completed a parenting class and two conflict resolution classes. On his release, his probation officer recommended a batterer's program which he began but had not completed. D.P. testified he did well on parole and visited A.P. monthly. He had signed up for a parenting class but had only attended two classes due to his work schedule. D.P. denied he was involved in any domestic violence with mother. He blamed his prior domestic violence on drug use and said he was clean since he was sentenced to state prison where he participated in 12-step meetings. He had no intention of reunifying with mother.

D.P.'s counsel argued he was entitled to services under section 366.22, subdivision (b) as an incarcerated parent who actively participated in services in custody. The Agency's counsel argued that D.P. did not meet the statutory criteria for services and the statute did not apply to him. Counsel also argued that mother had shown no change since the testimony in October. Mother was not in therapy or on medication, had not completed services to prevent domestic violence, and did not participate in drug treatment because she said it was not a problem.

In ruling, the court reviewed the history of the case, noting that D.P. was bypassed for services and mother's services were terminated. The court denied mother's petitions for modification, finding mother had made minimal changes since termination of services, having only completed the two remaining sessions of the anger management program she was already in. The court found there was no change in circumstances, and, even if there was, the proposed modification would not be in the minors' best interests.

7

The court found father's petition for modification untimely as it could have been brought in the previous October when he was released from custody since he had done programs in prison and was visiting the minor all prior to the six-month review hearing. Father still did not act when mother filed her petitions for modification in January. It was not until four months later that he attempted to extend services pursuant to section 366.22, subdivision (b). The court found that the statute did not apply to D.P. and that, in any case, the evidence did not support the necessary findings even if the statute had applied. The court observed that father was in custody for domestic violence against mother and had not continued to participate in the 52-week batterer's program and had no home for the child. The court denied father's petition for modification.

DISCUSSION

I

Mother contends the juvenile court abused its discretion in denying her petitions for modification because she demonstrated both changed circumstances and that the proposed order was in the minors' best interests.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[3] "The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is a preponderance of the evidence. [Citation.]" (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) Determination of a petition to modify is committed to the sound discretion of the juvenile court and, absent a

[3] Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).) The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ." (§ 388, subd. (d).)

8

showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319; *In re Robert L*. (1993) 21 Cal.App.4th 1057, 1067.) The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services. (*In re Stephanie M*., *supra*, 7 Cal.4th at p. 317.) In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability. (*Ibid*.; *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.)

At the time the juvenile court terminated services, mother had not completed anger management, was not drug testing, and had not participated in domestic violence classes. Mother's petitions for modification stated that, shortly after her services were terminated, she completed the anger management class. Further, she now had a stable home and was continuing parenting classes. The petitions did not mention drug testing, drug relapse prevention, or domestic violence classes. In her testimony mother simply said she was drug free but had not participated in any services. Similarly, she testified she had not been involved in any domestic violence but did not indicate she had participated in any classes or therapy to address the previous problem or deal with violence issues in any concrete manner. Additionally, she said she did not need mental health treatment, although there was evidence that she continued to have issues with labile emotions, and it remained unclear whether she continued to blame others for the minors' removal. At best, the evidence showed mother's circumstances were changing, not changed.

Mother was also required to show that the proposed modification was in the minors' best interests. The minors, who were overcoming developmental delays and behavioral issues which existed when they were removed from the home, needed permanence and stability with consistent parenting and continued therapy to meet their potential. In the months following the order terminating her services, mother had actively addressed only a few of the concerns which existed when the juvenile court terminated her services. The issues which remained were not likely to be resolved

9

quickly.  Mother was seeking not merely return of the minors, but additional services for an unknown period of time to achieve reunification.  Such delay was not in the minors' best interests.

Given that circumstances had not changed and that mother did not demonstrate that return would be in the minors' best interests, the juvenile court was not required to gamble with the minors' safety and stability by granting mother's petitions for modification.  There was no abuse of discretion in denying the petition.

II

Mother further contends that the beneficial parental relationship exception should apply because she visited the minors regularly and there was a strong bond between her and the minors.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child . . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]'  [Citation.]  If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child."  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)  There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child."  (§ 366.26, subd. (c)(1)(B).)  The party claiming the exception has the burden of establishing the existence of any circumstances which constitute an exception to termination of parental rights.  (*In re Cristella C.* (1992) 6 Cal.App.4th 1363, 1373; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(4); Evid. Code, § 500.)

Termination of parental rights may be detrimental to the minor when:  "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  However, the benefit to the child must promote "the well-being of the child to such a degree as to

outweigh the well-being the child would gain in a permanent home with new, adoptive parents.  In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.  If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re C.F.* (2011) 193 Cal.App.4th 549, 555.)  Even frequent and loving contact is not sufficient to establish this benefit absent a significant positive emotional attachment between parent and child.  (*In re I.R.* (2014) 226 Cal.App.4th 201, 213.)

Mother satisfied the first element of the exception by visiting the minors regularly. However, she did not establish that the strength and quality of the parent/child relationship would outweigh the security and sense of belonging adoption would provide.

When the minors were first removed from the home, they went willingly with the social worker and did not ask to return home.  The minors thrived in foster care where consistent and stable parenting reduced their developmental delays and decreased the behavioral problems of the two older minors.  They did not ask about visits but were happy to go because they got food and presents.  Mother's parenting in visits was good and this made visits pleasant but, as late as February 2015 in the observed visit, there were no signs or verbalizations of affection between mother and the minors.  The evidence showed that the quality of the parent/child contact was equivalent to that of a friendly visitor and there was no evidence that severing the contact would be detrimental to the minors.  The juvenile court did not err in failing to apply the beneficial relationship exception to avoid termination of parental rights.

### III

D.P. argues the denial of his petition for modification should be reversed for ineffective assistance of counsel because counsel delayed in filing the petition, thereby

11

causing the juvenile court to deny the petition as untimely. D.P. asserts that the juvenile court would have granted his petition for modification if it had been timely and that he would have reunified with the minor, avoiding termination of his parental rights. He contends that it was error to terminate his parental rights because counsel's inadequate performance constituted a violation of his due process rights.

D.P.'s appellate counsel sought expansion of her appointment in order to bring a petition for writ of habeas corpus in the juvenile court to litigate the question of ineffective assistance of trial counsel, relying on a broader factual basis than the record on appeal could provide. This court granted the request. (See *In re Darlice C.* (2003) 105 Cal.App.4th 459, 466.)

The petition was filed and fully litigated resulting in a lengthy written opinion by the juvenile court denying the petition.[4] The juvenile court found D.P.'s trial counsel's performance in the matter of timely filing a petition for modification to seek reunification services for D.P. after his release from prison was inadequate. However, the juvenile court did not find D.P. was prejudiced thereby because he did not "demonstrate that a better outcome than the termination of his parental rights" would have occurred. The court found D.P.'s conclusions speculative because there was no basis to conclude that D.P. would complete his services, if offered, or that completion would result in reunification. The juvenile court noted that prior to its ruling on May 19, 2014, the information suggested to the contrary. Further, there remained concerns about D.P.'s ongoing domestic violence and waiting for D.P. to complete services if the petition were granted would result in a significant delay in permanency for the minor.

A parent claiming ineffective assistance of counsel has the burden of showing that counsel failed to act in a manner to be expected of reasonably competent counsel, that

---

[4] At respondent's request we have taken judicial notice of the juvenile court's ruling.

"counsel's representation fell below an objective standard of reasonableness . . . ." (*Strickland v. Washington* (1984) 466 U.S. 668, 688; [80 L.Ed.2d 674, 693]; *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711.)  The parent must also show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington,* at p. 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)  A claim for ineffective assistance of counsel may be rejected "if the party fails to demonstrate that but for trial counsel's failings, the result would have been more favorable to the defendant." (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180.)

D.P. was unable to demonstrate that, had counsel's performance been adequate, he would have had a successful outcome in either his petition for modification or in successfully avoiding termination of his parental rights.  No due process violation or reversible error appears.

DISPOSITION

The orders of the juvenile court terminating parental rights are affirmed.


                                     /s/
                                Blease, Acting P. J.

We concur:


    /s/
Butz, J.


    /s/
Duarte, J.